# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RUFUS MCGILL**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | **CLASS ACTION COMPLAINT** |
| **CHW GROUP, INC.**, d/b/a Choice Home Warranty, a New Jersey corporation | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Rufus McGill ("McGill") brings this Class Action Complaint against Defendant CHW Group, Inc., d/b/a Choice Home Warranty ("Choice Home Warranty" or "Defendant") to: (1) stop its practice of placing calls using an automatic telephone dialing system ("ATDS") to the cellular telephones of consumers nationwide without their prior express consent and to consumers who have specifically requested to Defendant to stop calling them, (2) to make pre-recorded calls to landlines without the proper consent; (3) stop Defendant from calling consumers who are registered on the National Do Not Call Registry, and (4) stop calls to consumers who have already specifically demanded that the calls stop. Plaintiff, for his Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### PARTIES

1. Plaintiff McGill is a resident of Heidelberg, Mississippi.

2. Defendant Choice Home Warranty is a corporation incorporated and existing

1

under the laws of the State of New Jersey. Its principal office address is 1090 King Georges Post Rd, Edison, New Jersey 08837. Choice Home Warranty does business throughout the United States, including in the State of Illinois and in this District.[1]

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, a federal statute.

4. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant regularly conducts business in this District,[2] and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is located in this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

6. Defendant Choice Home Warranty offers appliance service contracts that purport to protect homeowners against high repair and replacement costs.

7. Unfortunately for consumers, Defendant Choice Home Warranty casts its marketing net too wide. That is, in an attempt to promote Choice Home Warranty's business and services, Defendant conducted (and continue to conduct) a wide-scale telemarketing campaign that features the making of repeated unsolicited autodialed and pre-recorded calls to consumers'

---

[1] Defendant has a subsidiary or affiliate in Illinois, Home Warranty Administrator of Illinois, Inc. *See* http://www.choicehomewarranty.com/user_agreement.php ("In Illinois, the company obligated under this Agreement is Home Warranty Administrator of Illinois.")
[2] *Id.*

cellular and landline telephones—including numbers that appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). In addition, Defendant calls consumers who have specifically requested that the calls stop.

8. While certain types of calls may be within the letter of the law for calls placed to landline ("wireline") telephones, the same calls to cellular ("wireless") telephones violate the TCPA where they are made without prior express written or oral consent. As explained by the Federal Communications Commission ("FCC") in its 2012 order:

> Additionally, we note that many commenters expressed concern about obtaining written consent for certain types of autodialed or prerecorded calls, including debt collection calls, airline notification calls, bank account fraud alerts, school and university notifications, research or survey calls, and wireless usage notifications. Again, such calls, to the extent that they do not contain telemarketing messages, would not require any consent when made to residential wireline consumers, but *require either written or oral consent if made to wireless consumers* and other specified recipients. [Emphasis added].
>
> *See In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 27 FCC Rcd. 1830 (Feb. 15, 2012).

9. Yet in violation of this rule, Choice Home Warranty fails to obtain any prior express consent (oral or written) to make the pre-recorded calls described herein to cellular telephone numbers.

10. Consumer complaints about Choice Home Warranty's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- "Choice home warranty. They won't stop calling even though I've asked repeatedly."[3]
- "I've asked them repeatedly to stop calling me. I've added them to the auto rejection list."[4]
- "I get calls from these people time and time again. I keep telling them to

---
[3] https://www.shouldianswer.com/phone-number/8008144345
[4] *Id.*

3

stop calling me. Its choice home warranty. If i was thinking about giving them any business, they lost it by their constant harassing phone calls"[5]
- "Company keeps calling my phone and most times don't say anything when I answer the phone."[6]
- "I have asked for them to stop calling and to be removed from the list and yet they call 8-9 times a day"[7]
- "This number keeps calling and hanging up and another number does the same, 732-898-3609"[8]
- "some home warranty robo call"[9]
- "rang once then hung up I told them to stop calling . I keep blocking numbers they call from."[10]
- "I was looking for an appliance warranty online and got sucked in by these jacka$$es promise of a free quote online. Stupidly entered my phone number... received NO quote online, but did receive daily and some times 4-5 times daily phone calls. I have answered on numerous occasions, told them I'm not interested so I finally just blocked them."[11]
- "Got one this morning and have been getting them every other day; no message left. Called it from a different number and they answered as 'choice home warranty.'"[12]
- "It was from a home warrant service - Choice .....I have asked a few time to be removed from the list ....I asked again today!"[13]

11. In placing the calls that form the basis of this Complaint, Defendant Choice Home Warranty, or its affiliated entities, utilized an ATDS in violation of the TCPA. Specifically, the hardware and software used by Choice Home Warranty has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Choice Home Warranty's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and

---

[5] https://800notes.com/Phone.aspx/1-732-374-3353/2
[6] *id*
[7] *id*
[8] *id*
[9] http://800notes.com/Phone.aspx/1-800-814-4345
[10] *Id.*
[11] *Id.*
[12] http://800notes.com/Phone.aspx/1-732-374-3396
[13] *Id.*

automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).[14]

12. Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

13. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the National Do Not Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

14. There are numerous third-party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[15] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[16]

15. When placing these calls to consumers, Choice Home Warranty failed to get the prior express consent of cellular telephone owners/users as required by the TCPA, Oregon

---

[14] It is without argument that Defendant uses an ATDS. *See* https://www.choicehomewarranty.com/quote-start.php ("By entering my information and clicking "Get Quote" I am providing express consent to be contacted by via email, phone and text, including my wireless phone number, regarding product and servicing information using automated technology.")

[15] *See e.g.* http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;

[16] https://www.neustar.biz/services/tcpa-compliance

UTPA, and Illinois DNC Law to make such calls.

16. Furthermore, Defendant calls these consumers who have no "established business relationship" with Defendant and who are registered on the National Do Not Call Registry.

17. Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

18. Defendant knowingly made (and continues to make) telemarketing calls to cellular telephones without the prior express consent of the call recipients. As such, Defendant not only invaded the personal privacy of Plaintiff and other members of the putative Classes but also intentionally and repeatedly violated the TCPA, Oregon UTPA, and Illinois DNC Law.

19. By making the autodialed telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls intentionally interfered with the Plaintiff and the other Class members use and enjoyment of their cellular telephones, including the related data, software, and hardware components.

20. The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff file the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, Oregon UTPA, and Illinois DNC Law, together with costs and reasonable attorneys' fees.

### **FACTS SPECIFIC TO PLAINTIFF RUFUS McGILL**

21. On December 2, 2014, Plaintiff McGill registered his cellular phone number on the National Do Not Call registry to avoid receiving unsolicited calls from telemarketers.

22. On October 28, 2016, Plaintiff McGill received an autodialed call from Defendant using phone number 800-814-4345 to his cellular phone. The call began with a noticeable pause, which is indicative of the use of an autodialer. The agent explained that they were calling about offering insurance in case something goes wrong in Plaintiff's home. Though Plaintiff did not consent to receive any calls from Defendant, he told the agent that he needed some time to think if this was something he would like to purchase.

23. On November 29, 2016, Plaintiff McGill received another autodialed call from Defendant using phone number 800-814-4345 to his cellular phone. This time, Plaintiff made it clear he was not interested in the services being offered by Defendant.

24. Despite making it clear he wasn't interested, McGill received yet another unsolicited, autodialed phone call on November 30, 2016 from Defendant using phone number 800-814-4345. This time, McGill made it clear he was not interested and wanted the phone calls to stop.

25. Unfortunately for Plaintiff McGill, the phone calls did not stop. McGill received at least 49 more unsolicited, autodialed phone calls from Defendant to his cellular phone. The final known call that McGill received was on August 3, 2017.

26. In total, Plaintiff McGill estimates that he received over 50 unsolicited, autodialed and unwanted calls from Defendant to his cellular phone. Numerous voicemail messages were left for McGill, who had to keep erasing them in order to free up the memory on his voicemail service.

27. Plaintiff McGill never provided any type of consent for Defendant Choice Home

Warranty to call him on his cell phone using an autodialer.

28. Defendant at all times is and was aware that the above-described autodialed telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them.

29. By making unauthorized autodialed and pre-recorded calls to consumer's telephone as alleged herein and to phone numbers that are registered on the do not call registry, Choice Home Warranty has caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited telephone calls as Choice Home Warranty's opt-out mechanism does not work.

## CLASS ACTION ALLEGATIONS

30. In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiff McGill brings this action on behalf of themselves and the five classes defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's cellular telephone number using an ATDS; (3) for the purpose of selling Defendant's products and services; and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.
>
> **Autodialed Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present: (1) Defendant (or an agency acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an automatic telephone dialing system, (4) after the person informed Defendant that s/he no longer wished to receive phone calls from Defendant.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

8

**Stop Call DNC Registry Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's telephone number, (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling Defendant's products and services (5) at least thirty (30) days after the person informed Defendant (or a third person acting on behalf of Defendant) that s/he no longer wished to receive calls from Defendant (or a third person acting on behalf of Defendant).

31. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

32. **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

33. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes

include, but are not necessarily limited to the following:

    a. Whether Defendant violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

    b. Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

    c. Whether Defendant made the calls with the use of an ATDS;

    d. Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

    e. Whether Defendant made calls to consumers, despite requests for the calls to be stopped;

    f. Whether the Plaintiff and the other members of the Class are entitled to statutory damages; and

    g. Whether Defendant acted willfully so as to require an award of treble damages.

34. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

35. **Fair and Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

36. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

37. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court for each of the Classes. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff McGill and the Autodialed No Consent Class)**

38. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

39. Defendant Choice Home Warranty, made unsolicited and unwanted autodialed telephone calls to cellular telephone numbers belonging to Plaintiff McGill and other members of the Autodialed No Consent Class without first obtaining prior express consent to receive such calls in an effort to sell its products and services.

40. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, en masse.

41. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's ATDS disseminated information en masse to Plaintiff McGill and other consumers.

42. By making the unsolicited telephone calls to Plaintiff McGill and the Autodialed No Consent Class members' cellular telephones without their prior express consent, and by utilizing an ATDS to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

43. As a result of Defendant's unlawful conduct, Plaintiff McGill and the members of the Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

44. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff McGill and the other members of the Autodialed No Consent Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff McGill and the Autodialed Stop Class)**

45. Plaintiff McGill incorporate the foregoing allegations as if fully set forth herein.

46. Defendant and/or its agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff McGill and the other members of the Autodialed Stop Call Class after being told to stop calling.

47. These solicitation telephone calls were made *en masse*.

48. Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (c)(5). As a result of Defendant's conduct, Plaintiff McGill and the other members of the Autodialed Stop Call Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**FOURTH CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff McGill and the Do Not Call Registry Class)**

49. Plaintiff incorporate the foregoing allegations as if fully set forth herein.

50. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

51. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

52.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[17]

53.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such

---

[17] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

54. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff McGill and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

55. Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel regarding any do not call list, and by failing to record and honor do not call requests.

56. Defendant made more than one unsolicited telephone call to Plaintiff McGill and other members of the Do Not Call Registry Class within a 12-month period without their prior

express consent to receive such calls. Plaintiff McGill and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

57. Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff McGill and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

58. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff McGill and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff McGill and the Do Not Call Registry Class suffered actual damages and, under 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

59. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**FIFTH CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiff McGill and the Stop Call DNC Registry Class)**

60. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61. Plaintiff McGill and other members of the Stop Call DNC Registry Class expressly requested that Defendant no longer place calls to them, after which Defendant failed to

place Plaintiff and other members of the Stop Call DNC Registry Class on Defendant's internal do-not-call list (or failed to do so within a reasonable time period).

62. More than thirty days following Plaintiff McGill and the other members of the Stop Call DNC Registry Class' express requests to not receive calls from Defendant, Defendant placed additional calls to them without their consent and in contradiction of their requests not to be called.

63. Defendant violated 47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff McGill and the Stop Call DNC Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

64. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff McGill and the Stop Call DNC Registry Class received more than one telephone call within a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Stop Call Registry DNC Class suffered actual damages, an invasion of his privacy, and, under 47 U.S.C. § 227(c), are each entitled to, *inter alia*, up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

65. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Stop Call Registry DNC Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Rufus McGill as the representatives of the Classes and appointing his counsel as Class Counsel;

2. An award of actual and statutory damages to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3. An order declaring that Defendant's actions, as set out above, violate the TCPA;

4. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6. An order requiring Defendant to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7. An injunction requiring Defendant to cease all unsolicited autodialed and prerecorded calling activities, and otherwise protecting the interests of the Classes;

8. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

10. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

11. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

12. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff request a trial by jury of all claims that can be so tried.

**RUFUS MCGILL**, individually and on behalf of all others similarly situated,

Dated: May 13, 2020

By: /s/ Stefan Coleman

Stefan Coleman
(law@stefancoleman.com)
Law Offices of Stefan Coleman, P.A.
1072 Madison Ave,
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Counsel for Plaintiff and the Putative Class*